UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THEARON SAMPSON,

    Petitioner,

v.                                              Case No. 8:22-cv-1713-WFJ-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

Thearon Sampson, a former Florida prisoner,[1] initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). At the Court's direction, Mr. Sampson filed an amended petition. (Docs. 4, 5). Respondent moves to dismiss the amended petition as time barred. (Doc. 9). Mr. Sampson opposes dismissal. (Doc. 11). For the reasons explained below, the amended petition is **DISMISSED as time barred**.

**I.    Background**

In August 2015, Mr. Sampson was charged with dealing in stolen property, burglary of an unoccupied conveyance, providing false information on a pawnbroker form, and

---

[1] Mr. Sampson was incarcerated when he filed this action, but he was subsequently released from custody. (Docs. 1, 14). His release does not moot this action. *See Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) ("Completion of a criminal sentence does not render a petition for habeas relief moot, because the ongoing collateral consequences of a wrongful conviction, such as the possible enhancement of a later criminal sentence on the basis of the earlier wrongful conviction, satisfy the case-or-controversy jurisdictional requirement of Article III of the Constitution.").

1

grand theft. (Doc. 10-2, Ex. 1). The charges stemmed from Mr. Sampson's theft of a "weed wacker" from a trailer in Tampa, Florida. (*Id.*, Ex. 1a, at 22). Following his arrest, Mr. Sampson was released on bond. (*Id.*, Ex. 1b, at 1).

The case went to trial. Mr. Sampson was present for jury selection on January 4, 2016. (*Id.*, Ex. 14, at 115). Trial was scheduled to resume at 8:30 a.m. on January 7, but Mr. Sampson did not show up. (*Id.*, Ex. 1a, at 4). Defense counsel stated on the record that she had last spoken to Mr. Sampson "when he appeared for his office appointment on" January 5. (*Id.*) The court took a recess and returned at 9:55 a.m. (*Id.* at 5). Counsel indicated that her "office" had "made attempts to . . . contact" Mr. Sampson without success. (*Id.* at 6). She had also "checked the local jail" and confirmed that Mr. Sampson had "not been arrested." (*Id.*) Furthermore, counsel's assistant had "check[ed] [her] voicemail to see if there were any messages left on [her] phone, [and] there were [none]." (*Id.* at 7). Based on these representations, the court found that Mr. Sampson had "voluntarily absented himself from these proceedings." (*Id.*) Mr. Sampson was then tried *in absentia*. *See* Fla. R. Crim. P. 3.180(c)(1) (authorizing judge to proceed with trial if defendant "voluntarily absents himself or herself from the presence of the court without leave of court"). The jury found him guilty of dealing in stolen property, providing false information on a pawnbroker form, and grand theft. (Doc. 10-2, Ex. 2). He was acquitted of burglary. (*Id.*) The court set sentencing for 1:30 p.m. on January 28 and issued a warrant for Mr. Sampson's arrest. (*Id.*, Ex. 1a, at 121-22).

Later that day, counsel spoke to Mr. Sampson on the phone. (*Id.*, Ex. 7, at 2). She informed him of "the outcome of trial," told him "the sentencing date and time," and urged

him to "turn[] himself in." (*Id.* at 3). Counsel asked why Mr. Sampson had missed the trial; he said he had been in an "automobile accident." (*Id.* at 2). He claimed that "his people" had called "the Clerk's office," but he "refused to give [counsel] the name of the people who had called the Clerk on his behalf." (*Id.* at 2-3). When counsel asked "further questions regarding the accident, such as the time and location," Mr. Sampson hung up the phone. (*Id.* at 3). Three days before sentencing, counsel called Mr. Sampson again and "reminded him of the sentencing date." (*Id.* at 4).

Mr. Sampson did not show up to his January 28 sentencing. (Doc. 10-3, Ex. 14, at 752). He was sentenced *in absentia* to concurrent terms of fifteen years' imprisonment for dealing in stolen property and five years' imprisonment for providing false information on a pawnbroker form.[2] (Doc. 10-2, Ex. 3; *see also* Fla. R. Crim. P. 3.180(c)(2) (authorizing judge to proceed with sentencing if defendant "absents himself or herself")). Meanwhile, Mr. Sampson had fled to New Jersey, where his "bondsman" ultimately "captured" him on March 22, 2016. (Doc. 10-2, Ex. 7, at 4).

Three months later, on June 30, 2016, Mr. Sampson filed a petition for a belated appeal. (*Id.*, Ex. 5). The state court denied the petition after an evidentiary hearing, finding that Mr. Sampson "did not ask [counsel] to file an appeal" when the two spoke on the phone after the verdict. (*Id.* at 2; *see also id.*, Ex. 11).

On July 28, 2017, Mr. Sampson moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 14, at 1). The postconviction court denied all claims

---

[2] The grand-theft conviction was dismissed on stipulation of the parties. (Doc. 10-2, Ex. 4).

save one without a hearing. (Doc. 10-4, Ex. 14, at 1065-66). The remaining claim alleged that counsel was deficient for failing to present "mitigating circumstances" at sentencing. (Doc. 10-3, Ex. 14, at 373). The court set the matter for an evidentiary hearing. (Doc. 10-4, Ex. 14, at 1066). At the hearing, the parties agreed that Mr. Sampson would dismiss his remaining claim in exchange for a five-year reduction of his fifteen-year sentence for dealing in stolen property. (*Id.*) The court resentenced Mr. Sampson "in accordance with the agreement," reducing his sentence to ten years' imprisonment. (*Id.*; *see also id.*, Ex. 15). Mr. Sampson unsuccessfully appealed the denial of his other claims. (*Id.*, Exs. 18, 20). He filed his federal habeas petition on July 26, 2022, and he later submitted an amended petition.[3] (Doc. 1 at 1; Doc. 5).

**II.    Discussion**

Respondent correctly contends that Mr. Sampson's amended petition is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Under AEDPA, a federal habeas petitioner has a one-year period to file a § 2254 petition. This limitation period typically begins running on the later of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). It is tolled for the time that a "properly filed

---

[3] For purposes of this order, the Court assumes that the amended petition relates back to the filing date of the original petition. *See* Fed. R. Civ. P. 15(c)(1); *Haecker v. Sec'y, Dep't of Corr.*, No. 5:17-cv-89-WFJ-PRL, 2019 WL 1763221, at *4 (M.D. Fla. Apr. 22, 2019) (assuming, for purposes of deciding timeliness, that "the amended petition relates back to the original petition").

application for State post-conviction or other collateral review" is pending in state court. 28 U.S.C. § 2244(d)(2).

As noted above, Mr. Sampson was sentenced on January 28, 2016. (Doc. 10-2, Ex. 3). Because he did not file a timely direct appeal, his convictions became final on February 29, 2016, when the time to appeal expired.[4] *See Bailey v. Sec'y, Fla. Dep't of Corr.*, No. 3:20-cv-1463-TJC-LLL, 2024 WL 964197, at *3 (M.D. Fla. Mar. 6, 2024) ("Because Petitioner did not appeal the [] judgment and sentence, his conviction became final when the time to file a direct appeal in the state court expired: thirty days after entry of the judgment. . . ."). The AEDPA limitation period began to run the next day—March 1, 2016.

The limitation period ran uninterrupted until it expired one year later, on March 1, 2017. Mr. Sampson did not file any tolling applications before that date. Instead, in July 2017, he moved for postconviction relief under Rule 3.850. (Doc. 10-2, Ex. 14, at 1). By that time, however, the limitation period had already expired. "[A] state court petition . . . that is filed following the expiration of the federal limitations period cannot toll that period because there is no period remaining to be tolled." *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001). Therefore, Mr. Sampson's § 2254 petition—filed on July 26, 2022—is untimely by over five years.[5] (Doc. 1 at 1).

---

[4] Mr. Sampson's unsuccessful petition for a belated appeal did not toll the limitation period. *See Carsten v. Dixon*, No. 5:22-cv-50-TKW-HTC, 2022 WL 17095397, at *2 (N.D. Fla. Oct. 24, 2022) ("A petition for belated appeal that is denied does not toll the AEDPA period during its pendency."), *adopted by* 2022 WL 17095916 (N.D. Fla. Nov. 21, 2022).

[5] Mr. Sampson was resentenced in July 2021, but that did not restart the AEDPA clock because the amended judgment was entered "*nunc pro tunc*" to January 28, 2016, the date of the original sentencing. (Doc. 10-4, Ex. 15; *see also Cassidy v. Sec'y, Fla. Dep't of Corr.*, 119 F.4th 1336, 1341 (11th Cir. 2024) (holding that petitioner's "amended sentences did not restart the federal statute of limitations" because the "state court

5

Mr. Sampson contends that this action should not be dismissed as untimely because he is entitled to equitable tolling. (Doc. 11 at 5). According to Mr. Sampson, he could not file a timely § 2254 petition because he did not obtain a copy of his trial and sentencing transcripts until July 2017—several months after the limitation period had expired. (*Id.* at 8-9).

A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of his § 2254 petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A petitioner must "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011). The diligence required is "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal quotation marks and citations omitted).

Because this is a "difficult burden" to meet, the Eleventh Circuit "has rejected most claims for equitable tolling." *Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004); *see also Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003) ("[E]quitable tolling applies only in truly extraordinary circumstances."); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Equitable tolling is an extraordinary remedy which is typically applied sparingly."). "[T]he burden of proving circumstances that justify the

---

checked the *nunc pro tunc* box on [the] amended sentences"); *Cummings v. Sec'y, Fla. Dep't of Corr.*, No. 3:21-cv-711-TJC-LLL, 2024 WL 3991188, at *4 (M.D. Fla. Aug. 29, 2024) (noting that the *nunc pro tunc* rule applies "even when a trial court substantively changes the petitioner's sentence upon resentencing")).

application of the equitable tolling doctrine rests squarely on the petitioner," and "[m]ere conclusory allegations are insufficient to raise the issue of equitable tolling." *San Martin*, 633 F.3d at 1268. The applicability of equitable tolling is determined on a case-by-case basis. *See Holland*, 560 U.S. at 649050.

    Mr. Sampson is not entitled to equitable tolling. The Court accepts Mr. Sampson's assertion that, because he was tried and sentenced *in absentia*, he needed a copy of the trial and sentencing transcripts to "ascertain what happened at trial [and] what errors to raise in a federal [habeas petition]." (Doc. 11 at 9). Still, Mr. Sampson's request for equitable tolling fails because he cannot show that he exercised "reasonable diligence" in obtaining the relevant transcripts. *Holland*, 560 U.S. at 651.

    Mr. Sampson was informed of the jury verdict on January 7, 2016, the same day it was handed down. (Doc. 10-2, Ex. 7, at 3). He also learned that sentencing would take place on January 28, 2016. (*Id.*) Instead of turning himself in, Mr. Sampson absconded to New Jersey, where he was apprehended on March 22, 2016. (*Id.* at 4). Despite knowing that he had been tried *in absentia*, Mr. Sampson did not submit any written request for court transcripts until December 22, 2016—eleven months after trial. (Doc. 10-4, Ex. 14, at 923). Mr. Sampson provides no reason why he waited almost a year to request transcripts from the state court. Because he fails to show that he "pursu[ed] his rights diligently," Mr. Sampson is not entitled to equitable tolling.[6] *Holland*, 560 U.S. at 649; *see also Dukes v.*

---

[6] For the same reason—*i.e.*, his lack of diligence in obtaining the relevant transcripts—Mr. Sampson is not entitled to a later start date of the limitation period under 28 U.S.C. § 2244(d)(1)(D). Under that provision, the clock begins on "the date on which the factual predicate of [a] claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). This alternative start date "begins when the factual predicate of a claim could have been discovered using due diligence, not

7

*Sec'y, Fla. Dep't of Corr.*, No. 21-13203-C, 2022 WL 832280, at *3 (11th Cir. Feb. 9, 2022) ("[Petitioner] has not shown that he was diligently pursuing his rights because, even though he requested copies of his transcripts, he did not file his first request until May 10, 2015, which was nine months after his transcripts were misplaced."); *Fairley v. Kent*, No. 18-31193, 2019 WL 12374114, at *2 (5th Cir. July 3, 2019) (no equitable tolling where petitioner "became aware on March 28, 2015, that his counsel was not providing him with a trial transcript," yet "provide[d] no reason why he waited until November 2015 to request a transcript from the state court").

Because he is not entitled to equitable tolling, Mr. Sampson's amended petition is dismissed as time barred.[7]

### III. Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Sampson's amended petition (Doc. 5) is **DISMISSED as time barred**.

2. The **CLERK** is directed to enter judgment against Mr. Sampson and to **CLOSE** this case.

3. Mr. Sampson is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial

---

when it was actually discovered." *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008), *vacated on other grounds by* 561 U.S. 1001 (2010). As explained above, Mr. Sampson fails to present "some good reason why he . . . was unable to discover [the relevant] facts at an earlier date." *Id.*

[7] On February 13, 2025, the Court directed Mr. Sampson to show cause why this action should not be dismissed for failure to keep the Court apprised of his address. (Doc. 13). One week later, the Court received a notice of change of address from Mr. Sampson. (Doc. 14). Accordingly, the show-cause order is discharged.

8

of his petition. 28 U.S.C. § 2253(c)(1). To obtain a certificate of appealability, Mr. Sampson must show that reasonable jurists would debate both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petition is time barred, Mr. Sampson cannot satisfy the second prong of the *Slack* test. As Mr. Sampson is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on February 25, 2025.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

9